UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

**FILED**
MAY 0 2 2008
[signature]
CLERK

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

|  |  |
|---|---|
| ALLEN TERRELL, | CIV. 07-4006 |
| Plaintiff, | MEMORANDUM OPINION |
| -vs- | RE: MOTION FOR SUMMARY JUDGMENT (DOC. 29) |
| ROBERT DOOLEY, Warden; VELMA SUDBECK, Case Manager; MR. TESSDSMA, Unit Manager; and MELINDA JOHNSON, Central Records Manager, | |
| Defendants. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## BACKGROUND

Allen Terrell was a prisoner in the custody of the State of South Dakota. He was not confined at the time he filed his lawsuit (Doc. 1). He did not identify his lawsuit as a civil rights suit under 42 U.S.C. § 1983, but he used the form provided to prisoners for that purpose. He alleged that he was being punished "under the new law, making them keep me 10 extra months." For relief he "would like to get reimbursed for the extra time I had to spend." He sued officials at a State prison in Springfield, South Dakota. He filed a supplement explaining his claim in detail in which he identified the Eighth and Fourteenth Amendments as being the constitutional provisions upon which his claim is based (Doc. 6). Later he added Melinda Johnson as a party "as the Central Records Manager" (Doc. 34). He has sued the defendants in their individual capacity.[1]

---

[1]Terrell did not designate in his complaint whether the defendants were being sued in their official or individual capacities. As a result of a discussion which occurred at the pretrial conference defendants agreed that plaintiff could amend his complaint to allege individual capacity. Plaintiff did. (Doc. 46 ).

Defendants have moved for Summary Judgment (Doc.29).  They have supported their motion with affidavits, a statement of undisputed material facts, a brief, a reply brief, and supplemental statements of material fact (Docs. 30-33, 42 & 44).  Plaintiff has resisted the motion   by filing a response to statement of material facts (Doc. 37), a statement of plaintiff's material facts (Doc. 38), an opposing brief (Doc. 39), an affidavit (Doc. 40), and a statement in opposition (Doc. 41).[2]

## JURISDICTION

Plaintiff filed this action pursuant to 42 U.S.C. § 1983.  Jurisdiction is proper pursuant to 28 U.S.C. § 1331.  The parties consented to have the Magistrate Judge hear the case (Doc. 25), and Judge Piersol signed an Order of Transfer on July 10, 2007 (Doc. 20 ).  The case is properly pending pursuant to 28 U.S.C. § 636(c)(1).

## DISCUSSION

**Standard of Review.**

"Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law." Clark v. Kellog Co., 205 F.3d 1079, 1082 (8th Cir. 2000); Fed. R. Civ. P. 56(c).  To avoid summary judgment, the non-moving party must "show that admissible evidence will be available at trial to establish a genuine issue of material fact." Churchill Business Credit, Inc. v. Pacific Mutual Door Co., 49 F.3d 1334, 1337 (8th Cir. 1995). "Once the motion for summary judgment is made and supported, it places an affirmative burden on the non-moving party to go beyond the pleadings and by affidavit or otherwise designate specific facts showing that there is a genuine issue for trial." Commercial Union Ins. v. Schmidt, 967 F.2d 270, 271 (8th Cir. 1992) (internal quotation marks and citations omitted).

---

[2]Documents 40 and 41 are duplicates.

## ANALYSIS

### A.   Overview.

Someone not known to this record and not a party to this lawsuit at the central records office failed to confirm Terrell's offense date. Instead an offense date was arbitrarily chosen. As a result his sentence was calculated under the new system rather than the old system. Under the old system he would have become eligible for release on parole earlier than actually occurred.

Terrell committed drug offenses in May 1995, but was not charged until November, 1996. In the interim on July 1, 1996, a different parole system became effective in South Dakota. An offense date before July 1, 1996, meant the inmate's parole and expiration of sentence dates would be calculated under the old system. An offense date after July 1, 1996, meant the parole and expiration of sentence dates would be calculated under the new system. After July 1, 1996, Terrell committed the offense of driving under the influence (DUI). Terrell was separately indicted in November, 1996, for both the drug offenses and the DUI offense. He pled guilty to both indictments. He received a ten year sentence on the drug charge. He received a two year sentence on the DUI charge. The DUI sentence was to run concurrently with the drug sentence. He began serving his sentences in April, 1997. His drug sentence should have been an old system offense. Someone in central records, however, selected an offense date in September, 1996. Using an offense date in September, 1996, meant that his drug sentence would be erroneously calculated under the new system. He was, however, correctly treated as a new system inmate for his DUI sentence. He would have become eligible for parole on August 18, 1998, if he had been treated under the correct system, but was not paroled until November 24, 1998. He was out of prison on parole until December, 2002, when he was taken into custody for possessing a firearm. He admitted violating conditions of his suspended drug sentence, so his suspended sentence was revoked. His full ten year

3

drug sentence was reinstated. Months later in February, 2003, he was again released on parole. But in November, 2003, he was convicted of DUI Fourth. He was sentenced to two years on the new DUI offense to run consecutively to the ten year drug sentence. Also, the parole board revoked his parole and took away some street time. Correctly calculated, this meant that his drug sentence would be finished on July 2, 2004, and his consecutive DUI sentence would begin on the same date. His consecutive DUI sentence would be finished on July 2, 2006. Because his consecutive DUI sentence was a new system offense he would have been automatically entitled to parole on April 20, 2005, if he had been fully compliant with his individual program directive at that time. He threw a milk carton at another inmate in January, 2005. As a result he received a disciplinary sanction which rendered him not fully compliant with his individual program directive. He would not have been entitled to automatic parole without a hearing before the parole board in April, 2005. On April 10, 2006, he complained to prison officials that his drug offense was an old system offense and that his parole eligibility and expiration dates should be shorter than then calculated.[3] By April 17, 2006, it was confirmed that his offense date was in fact an old system offense. He was not fully compliant with his individual program directive at that time because of the January, 2005, disciplinary sanction. On April 19, 2006, he filed a grievance to expunge his disciplinary sanction from his record. The warden granted his grievance. The disciplinary sanction was expunged from his record and he became eligible for automatic parole without a hearing on April 21, 2006. On that day a prison official asked for a parole plan from parole services. On April 24, 2006, Terrell was admitted to the penitentiary infirmary. On April 27, 2006, he was transferred to the hospital in Tyndall, South Dakota. On April 28, 2006, parole services provided prison officials with an approved parole plan

---

[3]The dates of April 20, 2005, for parole and July 2, 2006, for expiration of sentence are the shortened dates.

4

for Terrell to sign.  The plan targeted May 5, 2006, as the effective date to begin his parole.  A prison official hand delivered the parole plan to him on the same day for his signature.  Terrell remained hospitalized until May 5, 2006.  He was placed on parole upon leaving the hospital without having to return to prison.  He remained on parole until July 2, 2006, when he was discharged upon completion of his sentence.

### B.     Undisputed Facts.

●     November, 1996, Terrell was indicted both for the May, 1995, drug offenses and the DUI.  Terrell pled guilty to one of the counts of the drug indictment.  He also pled guilty to the DUI indictment.  He was sentenced to ten years with six years suspended for the drug conviction.  He was sentenced to two years for the DUI.  Both sentences were to run concurrently.

●     April, 18, 1997, the Union County Sheriff delivered Terrell to the State Penitentiary to begin serving his sentence.  The Judgment and Sentence documents for the DUI charge were delivered by the Sheriff to the penitentiary and showed the offense date.  The central records office correctly used the new system to calculate Terrell's release date for the DUI sentence.  The Sheriff did not deliver the Judgment and Sentence documents for the drug charge.  Later, the drug documents were sent by mail to the penitentiary by the Attorney General.  The drug documents did not show the offense date.  Instead of confirming the actual offense date for the drug charge, September 1, 1996, was selected as the offense date.  The new system was used to calculate Terrell's release date for the drug sentence.  Because the drug offense date was actually May 1, 1995, the old system with good time credits should have been used to calculate the release date.

●     November 24, 1998, Terrell was paroled under the new system.  Beginning in April, 2001, he also began serving the suspended portion of his drug sentence.

●     December, 2002, Terrell was taken into custody for possessing a firearm.

•       February, 2003, Terrell was paroled again under the new system.

•       November, 2003, he was charged with DUI Fourth. He was sentenced to two years. Unlike his previous DUI conviction, this sentence was to be served consecutively to the drug sentence. The parole board again revoked his parole and suspended sentence. Because the parole board took away some time counted against his original drug sentence while he was out, his new release date from the drug sentence became January 2, 2008, erroneously calculated under the new system. His two year sentence on the DUI Fourth would begin then.

•       2004, he appeared twice before the parole board, but was denied parole.

•       January, 2005, he received a disciplinary sanction.

•       2005 he appeared twice before the parole board, but was denied parole.

•       April 10, 2006, Terrell sent a kite to the attention of Melinda Johnson complaining that his sentence should have been calculated under the old system so that good time credits would reduce his sentence. He produced a charging document showing the drug offense date was in 1995 before the new system became effective on July 1, 1996. Melinda Johnson did not begin working in the central records office until 2003, about six years after Terrell's original release date had been calculated. Johnson investigated. By April 17, 2006, she had determined through communications with the Union County clerk of court that Terrell's offense date was May 1, 1995. It was then known that Terrell's drug sentence should have been calculated under the old system so that good time credits should have been applied to reduce his sentence. His release date was recalculated. His revised release date from the drug sentence was July 2, 2004. Terrell's DUI Fourth two year sentence would begin to run on July 2, 2004. Because his DUI Fourth happened after July 1, 1996, the new system applied to this sentence. He would have been automatically paroled without a hearing on April 20, 2005, provided that he was fully compliant with his individual program

6

directive. His major disciplinary sanction in January of 2005 would have disqualified him from automatic parole in April of 2005.[4]

- April 19, 2006, Terrell filed a grievance asking that his major disciplinary sanction be expunged from his record. Warden Dooley granted his request. After the major disciplinary sanction was expunged from his record Terrell was fully compliant with his individual program directive as of April 21, 2006. He then needed an approved parole plan before he could be released. Sudbeck on the same day communicated with parole services and the probation office to secure approval for his parole plan. The parole plan was approved by e-mail on April 21, 2006.

- April 24, 2006, he was transferred to the prison infirmary.

- April 27, 2006, he was transferred from the infirmary to the hospital in a nearby town.

- April 28, 2006, parole services e-mailed Sudbeck saying that Terrell's parole plan had been approved, that the plan was ready to be signed, that parole school and chemical dependency aftercare were being waived, and that his target release date would be May 5, 2006.

- April 28, 2006, Sudbeck personally delivered the parole plan to Terrell in the hospital so that he could sign it.

- May 5, 2006, Terrell was released from the hospital.

- May 5, 2006, he was released on parole.

- July 2, 2006, He was discharged from supervision. His consecutive DUI sentence expired.

---

[4]Because in April, 2005, the error had not been discovered, all obviously mistakenly still believed that his drug sentence would not be finished until January 2, 2008. That he might be automatically eligible for parole from his DUI Fourth consecutive sentence in April, 2005, before he even began to serve that sentence was likewise obviously not in anybody's mind. The point here is that even if Terrell's right to automatic parole had been considered under the new system in April, 2005, he was disqualified from automatic parole as a result of his disciplinary sanction.

## C.     Plaintiff's Claims.

In Documents 40 and 41 Terrell claims he was not advised by prison officials about the manner used to calculate his parole or sentence release dates. He claims not to be aware of any procedure which he could have used to challenge the method for calculating his parole or sentence release dates. He was unaware that an error was committed in calculating his parole and release dates until another inmate told him there was an error and that he should make it known to prison officials. He complains that it took a month to be released after he told the prison officials about the mistake. Although he was in and out of prison between 1997 and 2006, the original error followed him throughout. He claims Melinda Johnson and her office had knowledge about the error but failed to correct the error. He complains that there is no policy or check and balance to make sure such errors would not happen. "Without an offense date, they sloppily and recklessly used my date of arrest as the date of offense."

Terrell has admitted most of the facts stated in defendants statement of material facts (Doc. 37). He has denied defendant's statement of fact  that none of the defendants in this lawsuit were involved in calculating his initial parole and sentence release dates (Doc. 37, ¶ 24). He refers to paragraphs 4 and 9 in his unsworn affidavit (Doc. 40). In those paragraphs he alleges that he was not advised of the method used to calculate his release dates, but he does not contradict defendants' assertion that none of them was involved in the calculation.

He has denied that correctional staff met with him on April 30, 1997, to review his individual program directive and that his initial parole date was November 24, 1998 (Doc. 37,¶ 25). He refers to ¶ ¶4, 6, 8 and 9 of his sworn affidavit (Doc. 40). There he asserts no one talked with him about pre and post 1996 offense dates, that he was unaware an error had been made, and no one gave him anything in writing. Neither defendants' statement of the fact nor plaintiff's denial influence the

8

outcome. That no one talked to him about pre and post 1996 offense dates is not a material fact. He was paroled on November 24, 1998, which would not have occurred had he not been fully compliant with his individual program directive at that time. Plaintiff's version that he did not meet with correctional staff on April 30, 1997, to review his individual program directive is accepted as true.

He has denied that he wrote to the parole board in April, 2006, requesting the return of street time which had not been counted toward time served on his sentence. He has denied that he complained to the parole board about not receiving good-time credits. He has denied that he was told he would need to present his request at the next scheduled parole hearing in December of 2007 (Doc. 37, ¶ 38). Terrell refers to ¶ ¶4, 5, 8, and 9 of his sworn affidavit (Doc. 40). There he asserts he was not advised of the method used to calculate his release dates, that he is unaware of any procedure he could follow to complain about the method for calculating his release dates, that there was no explanation given to him about pre and post July 1, 1996, sentence systems for calculating parole and sentence release dates, and that the original error followed him throughout his exits from and re-entries into prison during the time of his sentence, but nobody advised him about the error on those occasions either (Doc. 40). The fact of the original error is not in dispute. That he was not advised of the original error and that it followed him throughout his incarceration do not influence the outcome. Plaintiff's version is accepted as true. Parenthetically, the date of discovery of the error does influence the outcome. The date of discovery, however, is not in dispute.

He has denied that Sudbeck worked expeditiously to get his parole plan finalized and the paperwork completed so that he could be released on parole (Doc. 37, ¶ 53 and 60). Terrell refers to ¶ ¶ 7, 9, and 11 of his unsworn affidavit. There he asserts that it was a month before he was released after he told prison officials about the error in calculating his parole release date and that

there was no check or balance to make sure errors such as occurred in his case would not happen. The nature of Sudbeck's specific involvement and her actions are not disputed.

He has denied that his disciplinary sanction rendered him not fully compliant and not eligible for parole in April 2005 (Doc. 37, ¶ 43).  He offers that most inmates are paroled when their time for parole is up.  Beyond that assertion he has offered no fact to contradict that his disciplinary sanction rendered him not fully compliant with his individual program directive and not eligible for parole in April 2005.[5]  The uncontradicted fact is that he was not eligible for parole until the major disciplinary sanction was expunged from his record.  It was expunged after he filed his grievance on April 19, 2006.  He became parole eligible as of April 21, 2006.

He has denied that after his individual program directive had been created, correctional staff met with him to review the information (Doc. 37, ¶ 15).  Whether correctional staff met with him or not does not influence the outcome.  It is accepted as true that correctional staff did not meet with him and they did not review with him information about his individual program directive.  These are not facts which are material to the decision.

Plaintiff's statement of facts (Doc. 38) essentially mirrors the facts stated in his sworn affidavit and statement (Docs 40 and 41).  His brief (Doc. 39) argues that he should have been released on parole on April 20, 2005, but was not released on parole until May 5, 2006.  Plaintiff cites case law from the Eighth Circuit and other circuits that any continued detention after the authority to hold a person in jail has expired deprives that person of his liberty.  He argues defendants are not protected by qualified immunity because he had a constitutional right not to be imprisoned longer than the law would permit and that this liberty interest was clearly established

---

[5]Recall the disciplinary sanction occurred in January, 2005, before Terrell would have been eligible for parole under the calculation under the old system.  Also recall that he appeared before the parole board twice in 2004 and twice in 2005 and was denied parole.

at all pertinent times.  As a fall back argument, plaintiff argues that even if the earliest time the defendants knew of the error was April 10, 2006, he is was not released until May 5, 2006, nearly a month later.  He argues the defendants failed to comply with South Dakota law which required his parole and sentence dates to have been calculated under the old system which existed before July 1, 1996.  The defendants also, plaintiff argues, should have had procedures in effect to reasonably assure that mistakes like this do not happen.  "In the present case, the conduct of Central Records was reckless and negligent," plaintiff argues.  He argues the warden and the central records manager are responsible for having a system in place to insure that information used to calculate parole and sentencing release dates are correct, together with a system of checks and balances to insure that errors are detected and corrected.  Plaintiff argues the error originally occurred in 1997 when he entered the penitentiary to serve his sentences and was perpetuated during the time when Melinda Johnson was in charge of the central records office.  "At the very least, there are material facts in issue" concerning these points, according to plaintiff.

### D.   Defendant's Claims.

Defendants claim they "were unaware of the mistake in the DOC's records regarding Terrell's offense date and, once Terrell brought this issue to their attention, affirmative and deliberate steps were taken to fix the mistake and Terrell was released *on parole* within a constitutionally reasonable amount of time."   Defendants claim "Terrell's knowledge, or lack thereof, regarding sentence and parole eligibility calculations plays no role in the qualified-immunity analysis."  Defendants agree with Terrell's contention that he first discovered the mistake around April of 2006.

In response to Terrell's contention that Melinda Johnson and her office had knowledge of

11

the mistake made in his calculations in 1997 but instead of correcting the mistake they perpetuated the error, defendants argue "[t]here are two flaws in Terrell's statement: first, Terrell cannot testify to what Melinda Johnson did or did not know (and his contention is conclusory); second, the knowledge or actions of Central Records staff cannot be attributed to Melinda Johnson and are irrelevant to the issue of qualified immunity."

In response to Terrell's claims that Central Records acted sloppily and recklessly, defendants urge that "Terrell does not show that the named Defendants in his lawsuit were aware of the mistake, and vicarious liability is not available under § 1983. Regarding the alleged absence of policies or procedures, Terrell does not show that the named Defendants were subjectively aware of the need for additional policies, or that, even if they had such knowledge, they had the statutory authority to take remedial measures. By way of further response about penal system policies defendants urge that "[t]he Supreme Court, however, has held that courts should decline to second-guess whether existing governmental policies and training are constitutionally adequate. See City of Canton v. Harris, 489 U.S. 378 (1989)."

Defendants assert they are protected by qualified immunity. They argue under Gregoire v. Class, 236 F.3d 413, 418-419 (8th Cir. 2000) that to establish a constitutional violation "it is not enough that a reasonable official should have known of the risk, a plaintiff must establish that the official in question did in fact know of the risk." They argue:

> The type of mistake that occurred in Terrell's case was also one that prison officials could have reasonably thought an inmate would identify and bring to their attention. Terrell was provided an Inmate Living Guide while in prison that in very simple terms explained the difference in the parole systems and methods for calculating sentences based on the date of the inmate's offense. The Inmate Living Guide also informs inmates of the prison's grievance system for resolving any complaints. Under the circumstances, prison officials could have reasonably assumed that inmates would read the Inmate Living guide and notify correctional officials regarding mistakes in calculating their parole-eligibility or sentence because, after all, the inmates should know the date of their crime and the Inmate Living Guide

12

clearly explains how this impacts their parole-eligibility and sentence calculations.

Defendants also assert that no legal decision has been cited to support the proposition that a failure to rely on an offense date was certain to result in a violation of Terrell's constitutional rights. Defendants assert "[i]t was not clearly unconstitutional for Johnson, Central Records staff, or other correctional officials to assume that the sentence and parole calculations for Terrell in the DOC's database were correct." Defendants assert they are entitled to qualified immunity unless they knew the information on the DOC database was not reliable or that a mistake had specifically been made in Terrell's calculations.

In response to Terrell's argument that he should have been released immediately when the mistake was discovered, defendants assert that he was still serving a valid criminal sentence for the DUI conviction, and that he was not entitled to release, but rather was entitled to a parole hearing so the parole board could determine whether he should be released. "Whether Terrell was to be paroled, and the completion of the paperwork related to his release, was handled by Parole Services and other prison officials." Terrell was not entitled to be automatically released under the new system because of the January, 2005, disciplinary report.

E.    **The Issues: Did Mr. Terrell Possess A Constitutional Right To Be Released on Parole Before May 5, 2006? If So, Was That Right Clearly Established?**

1.    Deprivation of a Constitutional Right.

The governing law is described by the Eighth Circuit in Davis v. Hall, 375 F.3d 703 (8th Cir. 2004). After viewing the record through the lens most favorable to Terrell "[e]ntry of summary judgment resting on qualified immunity is appropriate if, viewed through this lens, no genuine issue of material facts exists regarding whether the officials' actions, even if unlawful, were objectively reasonable in light of the legal rules that were clearly established at the time the actions were taken."

13

<u>Davis</u> at 711 (internal citations and quotation marks omitted). "42 U.S.C. § 1983 imposes civil liability upon any individual who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws. Nevertheless, qualified immunity shields government officials from suit unless their conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known." <u>Id.</u> (internal citations and quotation marks omitted). "The Supreme Court has generously construed qualified immunity protection to shield all but the plainly incompetent or those who knowingly violate the law. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." <u>Davis</u> at 711-712 (internal citations and quotation marks omitted).

"Courts employ a two-part inquiry to determine whether a lawsuit against a public official can proceed in the face of the official's assertion of qualified immunity. [6] This inquiry must be undertaken in the proper sequence. First, courts must consider whether, taken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right. The existence or nonexistence of a constitutional right is, therefore, the threshold question. If the answer to this first inquiry is no, courts do not delve further into the qualified immunity inquiry. Instead, the defendant is entitled to qualified immunity, and the suit is

---

[6]The Supreme Court is currently considering whether to adhere to this procedure. The Supreme Court granted certiorari in <u>Pearson v. Callahan</u>, ___ S.Ct. ___, 2008 WL 754340 (U.S., March 24, 2008) with the directive: "In addition to the questions presented by the petition, the parties are directed to brief and argue the following question: "Whether the Court's decision in <u>Saucier v. Katz</u>, 533 U.S. 194 (2001) should be overruled?"

not permitted to proceed. However, if a constitutional right may have been violated, the second step requires courts to ask whether the right was clearly established. This is a fact-intensive inquiry and must be undertaken in light of the specific context of the case, not as a broad general proposition." Davis at 712 (internal citations and quotation marks omitted).

The Eighth Circuit has recognized a protected liberty interest in being free from wrongful, prolonged incarceration. Id., citing Young v. City of Little Rock, 249 F.3d 730 (8th Cir. 2001). An inmate has a clearly established right to be released from prison once a judge's order suspending his sentence becomes final. At that time "the state lost its lawful authority to hold" the inmate. Davis at 713. "Therefore, any continued detention unlawfully deprived [the inmate] of his liberty, and a person's liberty is protected from unlawful state deprivation by the due process clause of the Fourteenth Amendment." Id. "Detention of a prisoner thirty days beyond the expiration of his sentence in the absence of a facially valid court order or warrant constitutes a deprivation of due process." Davis at 717.

The Eighth Circuit did not define the contours of the duty of prison officials to investigate to determine whether an inmate is being held unlawfully. Davis at 716. The Eighth Circuit said about the duty to investigate that other circuits have decided there is a duty to investigate after an inmate has provided documentary evidence to support his claim that he is being unlawfully incarcerated. Id. Without deciding whether such a duty exists in the Eighth Circuit, the Eighth Circuit said "whatever haziness obscures the exact contours of a duty to investigate burns off once the authorities *know* that they have no basis for detention ." Id. The turning point in Davis for granting qualified immunity to some of the defendants but not to others was that "some of the state defendants were on notice that the [inmate] was entitled to be released." Id.

15

"Prolonged detention does not rise to the level of a Fourteenth Amendment violation unless the defendants acted with the requisite state of mind. The protections of the Due Process Clause are triggered when the official's conduct was conscience-shocking and [when] the official violated one or more fundamental rights that are deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." Davis at 718 (internal citations and quotation marks omitted). "The Supreme Court has taken a context[-]specific approach to determining whether intermediate culpable states of mind, such as recklessness, support a section 1983 claim by shocking the conscience and, thus, violating due process." Id. (citation omitted). The inmate must "prove that the defendants were deliberately indifferent to his plight in order to prevail on his Fourteenth Amendment claim." Id.

In Davis there were disputed fact questions which precluded summary judgment. The first was about the duration of the wrongful incarceration. Duration of incarceration after his sentence expired is not a fact issue in Terrell's case because his sentence did not expire until after he had already been released on parole, so he was not incarcerated after his sentence had expired. He was paroled shortly after it was discovered that the new system was wrongly used to calculate his parole and sentence expiration dates for the drug offense. The issue in Terrell's case is whether he should have been released earlier on parole than May 5, 2006. Whether there are fact questions about earlier release on parole is considered below. The second fact question in Davis was about the nature and frequency of his protests. In Terrell's case there is no dispute that April 10, 2006, was the only occasion when Terrell protested his incarceration. There is likewise no dispute about the events which followed leading to his parole on May 5, 2006, and his discharge from sentence on July 2, 2006. Terrell has made the generic claim that it was a month before he was released on

16

parole after the discovery of the error, but he has not disputed any of the specific facts about the specific conduct of the respective defendants. Unlike <u>Davis</u>, Terrell was not reprimanded for his criminal thinking and the defendants did not ignore him or his protest. Unlike <u>Davis</u> there are no fact disputes about deliberate indifference in Terrell's case. There is no evidence that any of these defendants were personally involved in the original error. There is no evidence they knew of the error until Terrell complained on April 10, 2006.

Although Terrell has claimed a right to be released on parole before May 5, 2006, he has not furnished facts to support the claim. His claim is that he told the prison officials on April 10, 2006, that the wrong offense date was used to calculate his drug sentence, so that the wrong system was used to calculate his sentence. He claims that he should have been released on that very day. The facts are, however, that the parole board, as distinguished from any of these defendants, needed to approve his parole plan and that he needed to sign the plan. They did, and they established a release date of May 5, 2006. He was released from custody on that very day, which was also the same day he was released from the hospital in a nearby town where he had been hospitalized since April 27. Terrell has not established facts to show that he possessed a right to be released on parole before he was actually released on parole. He has not established that a constitutional right existed. Since the answer to this question is no, it is not necessary to delve further into the qualified immunity inquiry. Nonetheless, in the event a reviewing court views the matter otherwise, this discussion will not stop here.

    2. <u>Clearly Established</u>.

The second question of the qualified immunity analysis is whether the right alleged to have been violated was clearly established. <u>Davis</u> at 719. "In order for a right to be clearly established,

17

the contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right. In other words, a constitutional right is clearly established when it would be clear to a reasonable officer that his [or her] conduct was unlawful in the situation he [or she] confronted." Id. (internal citation and quotation marks omitted). In Davis it was found that a reasonable government actor would know that failing to respond to the inmate's requests to be released in keeping with the court order was unlawful. Id. In Davis, government officials who were denied the protection of qualified immunity had actual knowledge of the court order but failed to act. Id. In Terrell's case, the defendants did not fail to act after they received notice on April 10, 2006, of his claim about being treated under the new system instead of the old system. They acted by promptly investigating the offense date (the investigation took one week, Terrell claims the time could have been shorter), by promptly recalculating the parole and sentence expiration dates, by promptly responding to his grievance to expunge his disciplinary sanction so that he could become eligible for parole, by promptly asking for a parole plan and approval of the parole plan, by promptly hand delivering the approved parole plan to Terrell at the hospital for his signature, and by promptly releasing him to parole status upon his release from the hospital on the date targeted for parole release by the parole board. Terrell was later timely discharged from his sentence when it expired on July 2, 2006.

Unlike Davis, Terrell was not unlawfully incarcerated beyond the sentence ordered by a judge. The judge's orders required Terrell to serve two sentences consecutively. The consecutive sentence did not end until July 2, 2006. Unlike Davis who had been ordered released by an order of a judge, Terrell on April 10, 2006, was still serving a sentence imposed by a judge. Under the correct system— the new system for the DUI sentence he was then serving— he was automatically

18

entitled to parole only if he was fully compliant with his individual program directive. Because of his January, 2005, disciplinary sanction he was not automatically entitled to parole. After April 10, after he complained about being treated under the wrong system (he was half right, the drug sentence should have been treated under the old system, but the DUI sentence consecutive to the drug sentence was correctly treated under the new system), after he filed a grievance on April 19, 2006, asking to expunge his disciplinary sanction from his record, after the Warden promptly granted his request to expunge, only then and not before was Terrell as of April 21, entitled to parole. He entered the prison infirmary on April 24. He was transferred to the hospital on April 27, where he remained until May 5, 2006. Terrell was released from the hospital on May 5, 2006. On the same day his parole began upon release from the hospital. His sentence would not be fully served until July 2, 2006.

Terrell claims entitlement to parole under the new system during his DUI consecutive sentence as of April 20, 2005. The undisputed fact is that only inmates who are fully compliant with their individual program directive are entitled to automatic parole without a hearing. Terrell had a disciplinary sanction on his record from January, 2005, which rendered him not fully compliant with his individual program directive on April 20, 2005. He has not disputed that he was not fully compliant. His assertion is merely that most prisoners are paroled when their time is ripe. That assertion is not enough to make a disputed fact issue about his disciplinary sanction disqualifying him from being automatically paroled under the new system on April 20, 2005. The proof that the disciplinary sanction disqualified him from automatic parole in 2005 is in the pudding of his grievance a year later requesting that his disciplinary sanction should be expunged from his record.

There has not been a deprivation of the constitutionally protected liberty interest in being free

from wrongful, prolonged incarceration for the period of time before April 21, 2006. Since the answer to this first inquiry is no, it is not necessary to delve further into the qualified immunity inquiry. Defendants are entitled to summary judgment as to plaintiff's claims pertaining to the time before April 21, 2006.[7]

Regarding the time between April 21, 2006, and May 5, 2006, Terrell became entitled to parole automatically without a hearing before the parole board under the law of South Dakota as of April 21, 2006. Since he was not released on parole until May 5, 2006, there could potentially be a violation of his constitutionally protected interest in being free from wrongful, prolonged incarceration. Since a constitutional right could have been potentially violated for this period of time, the second step requires courts to ask whether the right was clearly established. This is a fact-intensive inquiry and must be undertaken in light of the specific context of the case, not as a broad general proposition. Davis at 712. "In order for a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right. In other words, a constitutional right is clearly established when it would be clear to a reasonable officer that his [or her] conduct was unlawful in the situation he [or she] confronted. Davis at 719.

The actions of the prison officials between April 10 and April 21 were objectively reasonable. Taking seven days to conclude the investigation about the offense date after being placed on notice is a reasonable time. Even if the investigation of the offense date could have taken

---

[7]Regarding the time between August 18, 1998, when he would have first been eligible for parole if he had been treated under the old system and November 24, 1998, when he was released on parole under the new system, plaintiff has made no argument that he should have been released August 18, 1998. There is no evidence in the record beyond the fact that had he been treated under the correct system he would have been eligible for parole on August 18, 1998. Being eligible for parole under the old system as of August 18, 1998, would have meant that he was eligible for a hearing before the parole board, not that he would have been released on August 18, 1998.

less than seven days, Terrell did not become eligible for automatic parole until April 21. Two days to consider and act on the grievance to expunge the disciplinary sanction from Terrell's record so that he could be rendered fully compliant with his individual program directive and become eligible for parole is reasonable. It was also reasonable for the prison official to grant the grievance. Indeed, the outcome could have been quite different for Terrell if the grievance had been reasonably denied. No reasonable prison official would understand that his or her conduct was unlawful in the situation facing them at that time.

The next period of time is that between April 21 and May 5. On April 21, but not before, Terrell became eligible for parole without a hearing before the parole board. The record does not completely explain what needed to happen before Terrell could be released on parole without a hearing before the parole board. Day one of parole eligibility is April 21. South Dakota Codified Laws (SDCL) 24-15A-15 provides:

> Parole is the conditional release of an inmate from actual penitentiary custody before the expiration of the inmate's term of imprisonment. The prisoner remains an inmate under the legal custody of the department until the expiration of the inmate's term of imprisonment. A prisoner is not required to accept parole.

SDCL 24-15A-38 provides:

> Each inmate shall be released from incarceration to parole supervision, without a hearing with the board, at the time of the inmate's initial parole date, if the inmate has substantively met the requirements of the individual program directive established by the department, agreed to the conditions of supervision and has an approved parole release plan. (emphasis added).

SDCL 24-15A-35 provides that at least 30 days before the initial parole date the warden shall notify the parole board about the inmate's compliance with the program directive. SDCL 24-15A-36 provides that at least 30 days before the inmate's initial parole date the inmate must submit a parole release plan to the executive director of the parole board. SDCL 24-15A-36 provides as a condition

21

of parole release the inmate shall be required to sign an agreement setting forth the conditions of supervision placed on the inmate <u>by the board and the department</u>. The board is the Board of Pardons and Paroles. SDCL 24-15A-2. These statutory conditions precedent to parole are expected to take at least 30 days, but they took only 14 days for Terrell. The parole board, not these individual defendants, under South Dakota law established the conditions of parole supervision placed on Terrell. Terrell was also required to sign an agreement setting forth the conditions of supervision. This agreement was given to Sudbeck by parole board staff on April 28, 2006. She hand delivered it the same day to Terrell in the hospital in a nearby town for his signature. The target date of May 5, 2006, for Terrell's parole release was established by the parole board or its staff. All of this time Terrell was in the hospital where he had been since April 24. He was released from custody to parole from the hospital without having to return to the prison.

Terrell did not possess a clearly established right to be released on parole before May 5, 2006. No reasonable prison official would understand that his or her conduct under these circumstances deprived Terrell of a constitutionally protected liberty interest in being free from wrongful, prolonged incarceration. For the sake of argument, even if there were an unlawful prolongation of Terrell's incarceration, there are no material facts to suggest the defendants' actions, even if unlawful, were anything but objectively reasonable in light of the judge's drug and DUI sentences and South Dakota parole statutes. The sentences and the parole statutes were clearly established at the time the actions of these defendants were taken. <u>See</u> <u>Davis</u> at 711. The unknown person who selected the wrong offense date which triggered the original error to calculate the drug sentence under the new system instead of the old system, and which triggered the subsequent miscalculations, is not a party to this lawsuit.

22

For the period of time after April 21, 2006, there likewise has been no constitutional deprivation of Terrell's liberty interest under the Fourteenth Amendment. Terrell had no clearly established right to release on parole under the constitution or statutes of which a reasonable prison official in the position of these defendants would be aware, or aware that he or she was violating. "The Supreme Court has generously construed qualified immunity protection to shield all but the plainly incompetent or those who knowingly violate the law. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Davis at 711-712. These defendants were not plainly incompetent. These defendants did not knowingly violate the law. There were no bright lines which were transgressed. For the sake of argument, even if Terrell had a right to be released on parole before May 5, 2006, these defendants are protected by qualified immunity.

Plaintiff has also made his claim under the Eighth Amendment. The standard under the Eighth Amendment is deliberate indifference. For the same reasons as described above, none of these defendants was deliberately indifferent to Terrell's rights under the Eighth Amendment. Both plaintiff and defense have referenced Diecks. Sample v. Diecks, 885 F.2d 1099 (3rd Cir. 1989). Diecks was decided principally upon Eighth Amendment grounds. Like Davis, the turning points in Diecks were notification and knowledge of the inmate's problem, and the prison official's failure to act after being notified. The main differences between Terrell's claim and the inmate's claims in Diecks and Davis are that (1) Terrell was serving a valid sentence when the prison officials were notified and he was not then entitled to automatic parole release because of the disciplinary sanction; and (2) as soon as the prison officials became aware of Terrell's situation they promptly acted to investigate and respond so that Terrell was not detained longer than the law allowed or required.

## CONCLUSION

Terrell's consecutively served sentence for DUI did not expire until July 2, 2006. He was

discharged from that sentence on July 2, 2006, so he was not wrongfully incarcerated for longer than his sentence. He did not become eligible for automatic parole under the new system until April 21, 2006. By South Dakota statute the parole board, not any of these defendants, could approve his parole plan. The parole or its staff established his release date of May 5, 2006. He was released by the prison officials on parole on May 5, 2006. There was no court order or statute that required his release on parole before he was actually released from custody and placed on parole. After viewing the record through the lens most favorable to Terrell, (1) he did not possess a constitutional right to be released on parole before he was actually released on parole, so the threshold issue about the existence of a constitutional right is answered in the negative; (2) the actions of these defendants even if unlawful for the sake of argument, were objectively reasonable in light of the judge's drug and DUI sentences and South Dakota's parole statutes that were clearly established at the time the actions were taken. Whether qualified immunity protects these defendants does not need to be decided because there was no constitutional violation. Even if there were a constitutional violation, for the sake of argument, these defendants would be entitled to the protection of qualified immunity because Terrell's right to be released on parole before May 5, 2006, was not clearly established and because defendants' conduct was objectively reasonable. Accordingly, Defendant's Motion for Summary Judgment (Doc. 29) is GRANTED.

Dated this 2 day of May, 2008.

BY THE COURT:

John E. Simko
United States Magistrate Judge

ATTEST:

JOSEPH HAAS, Clerk

By _____ Deputy

24